UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HAROLD HENSLEY,

                         Plaintiff,

      v.                                     3:08-cv-0626

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

Harold Hensley ("Plaintiff") brought this suit under section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. section 405(g), to review a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability and supplemental security benefits.

**I.**      **FACTS**

      **a.**      **Procedural History**

Plaintiff applied for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits on July 22, 2005. On October 26, 2005, the applications were denied. Plaintiff filed a timely request for hearing. A video teleconference hearing was held before an Administrative Law Judge ("ALJ") on November 7, 2007. After the hearing, the record was held open and new evidence was submitted.

In a decision dated December 27, 2007, the ALJ found that Plaintiff was not disabled. The Appeals Council denied the request for review. Plaintiff commenced the present action seeking review of the Commissioner's decision.

**b.     Medical History**

Plaintiff was born on July 30, 1961. He had prior work experience as an electrician and a maintenance person. He last worked on February 15, 2003.

Plaintiff received primary care treatment from physician's assistant Paul Hodgeman from 2004 through 2007. During this period, Plaintiff received treatment for various ailments, including hemorrhoids, hyperlipedemia, GERD, allergies, sinusitis, depression, bilateral knee pain, right lateral epicondylitis, low back pain and smoking cessation. The examinations of Plaintiff over this period were unremarkable. Plaintiff's anxiety was noted to be controlled and stable with medication. Examination of the knee demonstrated no obvious gross edema, and negative drawers and McMurray's tests bilaterally with some palpable edema and crunching noted. His distal pulses and sensation were intact. With respect to his back pain, Plaintiff was found to have limited flexion due to discomfort. The straight leg raises were negative and his reflexes found to be intact.

On November 29, 2007, Hodgeman completed an evaluation finding that Plaintiff could only sit, stand or walk for one hour at a time out of an 8 hour workday and that he could sit, stand, or walk for a total of three hours each during an 8 hour workday. Plaintiff was found to be able to lift and carry up to 10 pounds occasionally. Plaintiff was determined to be able to use his hands for simple grasping, pushing and pulling (arms and legs), and fine manipulation. Hodgeman found that Plaintiff could never bend, squat, crawl or climb and

could occasionally reach.  On January 14, 2008 (after the ALJ's decision), Dr. Martin signed Hodgeman's report stating that he agreed with Hodgeman's conclusions.

  Commencing in July 2005, Plaintiff received mental health treatment for anxiety and alcohol abuse with Douglas Beattie, M.A.  During his treatment, Plaintiff was found to be "good" in the areas of: attention and concentration, orientation, memory, information, and insight and judgment.  Plaintiff was able to perform calculations, do serial sevens, etc.  Plaintiff was found to have good grooming, but was noted to have anxiety that could be a problem in the work environment.  Plaintiff was found to have a global assessment of functioning of 59 (out of 100).  Beattie noted that Plaintiff had dysthymic disorder, generalized anxiety disorder, general medical stomach problem, and psychosocial environmental problems.  Beattie deferred diagnosis on Axis II.  Beattie did not note Plaintiff as having any limitations.  Beattie also noted that he was unable to provide a medical opinion regarding Plaintiff's ability to do work-related activities.  Plaintiff discontinued seeing Beattie in February 2007.  At that time, Beattie found Plaintiff to have dysthymic disorder, generalized anxiety disorder, and psychosocial environmental problems, with a global assessment of functioning of 59.

  Plaintiff's elbows were treated by an orthopedist who, in November 2006, found Plaintiff to have full active range of motion, no atrophy, and full strength.  Plaintiff was noted to have distinct tenderness of bilateral epicondyles.

  Dr. Pranab Datta perform a medical consultative examination on September 14, 2005. Dr. Datta's physical and mental examinations were largely unremarkable.  Dr. Datta concluded that Plaintiff's prognosis was good and that he has no limitations with speech, hearing, his upper extremities, or in sitting.  Plaintiff was found to have mild limitations with

gross motor activities using his left shoulder and prolonged walking, standing or climbing. Plaintiff was to avoid heavy lifting and carrying.

Dr. Mary Ann Moore performed a consultative psychiatric evaluation on September 14, 2005. Dr. Moore found that Plaintiff could understand simple directions and instructions, perform simple rote tasks and consistently perform simple tasks. Plaintiff was found to have mild impairment with attention and concentration. His memory was intact. Dr. Moore concluded that Plaintiff has the ability to learn simplistic and complex tasks, although his anxiety increases with complex information. Plaintiff was noted to have difficulty dealing with stress and to be withdrawn and anxious when being around other people, which "could cause problems with working with coworkers and the public." Plaintiff's depression and anxiety were found to possibly cause problems with making appropriate decisions and maintaining a regular work schedule. Moore diagnosed Plaintiff with generalized anxiety disorder, panic disorder with possible beginnings of agoraphobia, and posttraumatic stress disorder.

Dr. Apacible performed a record review on October 22, 2005 and issued a functional capacity assessment stating that Plaintiff could perform simple task work.

At the hearing, Plaintiff testified, among other things, that he drives; he suffers from anxiety and depression every day which affect his ability to eat and sleep; he has panic attacks one to two times per day; his panic attacks affect his breathing; he stopped receiving counseling because "I felt good" and because he moved; he has trouble sleeping; he does not visit with friends; and he has pain in his wrists, elbows, lower back, neck, shoulder, and knees.

### c. ALJ Decision

Based on the record evidence, the ALJ concluded that (1) Plaintiff met the insured status requirement; (2) Plaintiff has not engaged in substantial gainful activity since February 15, 2003; (3) Plaintiff's generalized anxiety disorder, alcohol abuse, bilateral patellofemoral syndrome, and bilateral lateral epicondylitis constituted severe impairments; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functioning capacity to perform simple repetitive jobs and can lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for a total of about six hours in an eight hour workday; sit for about six hours in an eight hour workday; and push/pull 20 pounds occasionally and 10 pound frequently; (6) Plaintiff cannot perform any past relevant work; and (6) considering Plaintiff's age, education, language abilities, prior unskilled work, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

The decision of the ALJ was affirmed by the Appeals Counsel. Plaintiff now seeks review of the Commissioner's determination.

## II. STANDARD OF REVIEW

The court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the court must determine whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 9 (2d Cir. 1990); Shane v. Chater, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the court reviews whether the

Commissioner's findings are supported by substantial evidence within the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 9; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  The Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez, 77 F.3d at 46; Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion.'"  Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits.  See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel, 204 F.3d 48, 48–49 (2d Cir. 1999); Bush v. Shalala, 94 F.2d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

> significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment which is listed in Appendix 1 of the regulations, [t]he [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Prior to applying this five-step framework, the ALJ must determine the date on which the claimant-plaintiff last met the Act's insured status requirement, whereby the claimant must establish disability prior to or on that date last insured. See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131(b), 404.315(a); see also Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir. 1989).

## III. DISCUSSION

Plaintiff contends that the ALJ erroneously concluded that Plaintiff is an active individual. While the record does reflect some limitations on Plaintiff's daily activities, the ALJ's conclusion is supported by substantial evidence. There was evidence in the record that Plaintiff drove himself, cared for his personal needs, performed household chores (including cleaning, cooking occasionally, home repairs, yard work, laundry, taking care of a friend's dog), shopped for groceries, paid bills, shopped with friends, went outside daily, drove and ran running errands for a friend, socialized with friends and family, read books, played guitar, hunted deer and turkey, attended church, applied for jobs and sought vocational services.

Plaintiff also contends that the ALJ erroneously discounted the functional assessment performed by Mr. Hodgeman. The ALJ gave this assessment little weight

because physician assistants are not acceptable sources of medical opinions under applicable regulations. 20 C.F.R. §§ 404.1513, 416.913. After the ALJ issued his decision, on review to the Appeals Council, Plaintiff resubmitted Hodgeman's assessment co-signed by Dr. Martin. Assuming this is the functional equivalent of an assessment by a physician, the Court finds the assessment to be of little value because: (1) it is unclear that it relates to the period on or before the ALJ's decision, see Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) ("[E]vidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review . . . [but the] evidence must be new and material and . . . must relate to the period on or before the ALJ's decision."); and (2) it is unsupported by objective medical evidence. There is no record evidence that Dr. Martin ever examined Plaintiff. There are no treatment notes from Dr. Martin. Further, Hodgeman's treatment notes do not adequately support the conclusions in his (or Dr. Martin's) functional assessment and appear to be inconsistent with the other medical evidence in the record and the evidence concerning Plaintiff's activities.

With respect to the mental health treatment by Mr. Beattie, he is not considered an acceptable medical source under the regulations, 20 C.F.R. §§ 404.1513, 416.913., and, in any event, Beattie's treatment notes and reports do not support a finding that Plaintiff's mental conditions are sufficiently disabling.

### IV.    CONCLUSION

In reviewing disability claims, a district court may affirm, modify, or reverse the determination of the Commissioner with or without remanding the case for a rehearing. See 42 U.S.C. § 405(g). For the reasons previously stated, the Court finds that the ALJ's

decision is supported by substantial evidence.  Accordingly, the determination of the

Commission is AFFIRMED.

IT IS SO ORDERED.

Dated:August 27, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge